UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BOBBI J.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:19-cv-03117-DML-JRS |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Decision on Complaint for Judicial Review

Bobbi applied in January 2016 for Disability Insurance Benefits (DIB) and Supplemental Security Income Benefits under Titles II and XVI, respectively, of the Social Security Act, alleging that she has been disabled since February 25, 2015. Her applications were denied initially on April 25, 2016, and on reconsideration on August 23, 2016. After a hearing held July 16, 2018, before administrative law judge Albert J. Velasquez, the ALJ issued his decision on September 28, 2018, that Bobbi was not disabled. The Appeals Council denied review on May 28, 2019, rendering the ALJ's decision for the Commissioner final. Bobbi timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

---

[1]  To protect privacy interests of claimants for Social Security benefits, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions. The plaintiff will therefore be referred to by her first name.

Bobbi contends that the ALJ erred by (1) failing to evaluate properly the opinion of her treating psychiatrist, (2) failing to rationally support the adverse credibility determination, and (3) failing to account properly in the RFC for her (i) moderate difficulties in concentrating, persisting, or maintaining pace, (ii) moderate difficulties interacting with others, and (iii) need to attend medical visits with her counselor and her psychiatrist on a consistent and frequent basis.

The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address Bobbi's assertions of error.

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Bobbi is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled.  Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits.  *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five.  RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations.  20 C.F.R. § 404.1545.  At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled.  The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I.  The ALJ determined at step five that Bobbi was not disabled.

Bobbi was born in 1967, was 47 years old at the alleged onset of her disability in February 2015, and was 51 years old at the time the ALJ issued his decision. Bobbi has a relatively weak work history. Her most recent work before her alleged onset was as a housekeeper at a motel, where she worked for about ten months until February 2015. Bobbi attended high school through the 11th grade, although her reading skills are low. In connection with her disability applications, she was administered an IQ test, and her full scale IQ was measured at 70, at the level of borderline intellectual functioning. Throughout the period under review, Bobbi has not lived by herself. At alleged onset, she lived with one of her daughters, but beginning in late 2016, she moved to her parents' home and lives in their basement.

At step one, the ALJ found that Bobbi had not engaged in substantial gainful activity since her alleged onset date. At step two, he determined that Bobbi's severe impairments were osteoarthritis, coronary artery disease, major depressive disorder, PTSD, borderline intellectual functioning, and borderline personality disorder. At step three, the ALJ determined that no listings were met or medically equaled.

For the RFC, the ALJ decided that Bobbi is capable of a range of medium work. She can sit for six hours and stand and/or walk for six hours in a work day; lift/carry/push/pull up to 50 pounds occasionally and up to 25 pounds frequently; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; never

climb ladders, ropes, or scaffolds; never work in a dangerous environment around bodies of water, open flames, or moving machinery; and must avoid concentrated exposure to respiratory irritants. To address Bobbi's severe mental impairments, the ALJ limited her to (i) only occasional interaction with the public, coworkers, and supervisors, (ii) unskilled work, *i.e.* work that can be learned in 30 days or less or by demonstration, and (iii) a work setting that does not vary the routine except occasionally. The ALJ did not include any limitations to account for any deficits in concentrating, persisting, or maintaining pace, but instead decided that Bobbi can sustain attention for two-hour segments—a time frame typical to competitive work. (R. 19).

Based on the RFC and the testimony of a vocational expert, the ALJ found at step four that Bobbi could not perform her past work as a housekeeper because of the exposure to respiratory irritants involved in that job. At step five and also based on the VE's testimony, the ALJ determined that Bobbi's vocational factors and RFC permit her to work in the following jobs available in significant numbers in the economy: laundry worker, factory helper, and general helper. Accordingly, the ALJ concluded that Bobbi was not disabled.

## II.     Bobbi's assertions of error are persuasive.

Bobbi's assertions of error relate to the ALJ's analysis of the severity of her mental impairments and their effects on her functioning. The errors, if they exist, affect the ALJ's step three decision and the RFC.

6

As explained below, the court finds that the Commissioner's decision must be reversed and remanded, primarily because additional expert medical review is required to provide an assessment, supported by substantial evidence, of the severity of Bobbi's impairments, their effects on her functioning, and the consistency of the evidence of Bobbi's intensive mental health treatment with Bobbi's own statements about her functioning and the opinions of her treating psychiatrist. Nearly *all* of the salient mental health treatment records were not reviewed by medical experts, and yet the ALJ decided on his own the import of the medical assessments in those records. That is error in this case, requiring remand. *See Moreno v. Berryhill,* 882 F.3d 722 (7th Cir. 2018) (determining that ALJ's trek on his own through years of mental health records was not justified and resulted in the ALJ improperly "playing doctor"; new expert medical assessment was necessary based on new evidence that substantially changed the picture of the claimant's impairments and functioning from the time the record was reviewed by state agency experts).

The state agency medical experts had before them only a small window into Bobbi's severe mental health conditions of, and her treatment for, PTSD, depression, low intellectual functioning, and her personality disorder.

The experts had available a smattering of evidence from late 2015 and early 2016. They knew the following: Beginning in October 2015, Bobbi restarted treatment for depression, anxiety, and panic attacks, after not having treatment for some time. She started counseling and was put on a medication regimen. Bobbi

had attempted suicide at least two times in the past through drug overdoses, and she was having great difficulty dealing with past trauma in her life (including having been raped repeatedly by her father from about age 10 to 17, and having been beaten and abused by her spouse in her adult life). Despite having restarted treatment, Bobbi attempted suicide again in late November 2015, by taking about 25 Trazodone pills (which treats depression), 5-7 Xanax pills (which treats anxiety), and having used cocaine the same day. She was hospitalized for a short period, and arrangements were made for her to begin additional treatment. She began attending daily therapy sessions at a substance abuse treatment facility to guard against relapse in drug and alcohol abuse, continued to attend her other psychological counseling focused on her PTSD and anxiety, and was started on a medication regimen (low doses of Seroquel, an antipsychotic drug) for her personality disorder. Bobbi was also seen by two consultative psychologists, who conducted mental status examinations, administered an IQ test, and provided reports of their examinations.

      The experts did not have any of the records of Bobbi's significant and regular mental health treatment and assessments in 2016 through 2018 by a psychiatrist (Dr. Fretwell) and a licensed mental health counselor (Ms. Turner). Bobbi attended individual therapy sessions with Ms. Turner (or sometimes a substitute when Ms. Turner was not available) at least 27 times between July 2016 and May 2018 (and presumably beyond). None of the records from these therapy sessions or the treatment plans created from these therapy sessions were reviewed by agency

medical experts. They were, however, reviewed by Dr. Fretwell, Bobbi's treating psychiatrist. Bobbi saw Dr. Fretwell throughout this same time frame for medication management and psychological assessment at least 10 times. None of Dr. Fretwell's analyses and reports were reviewed by state agency experts. Dr. Fretwell also provided medical opinions dated June 6, 2018, which—if credited—would require a finding that Bobbi is presumptively disabled at step three or, at the very least, has limitations because of the effects of her mental impairments that would preclude an RFC that is consistent with competitive work. State agency experts did not review Dr. Fretwell's opinions, and the ALJ's analysis of the weight he gave to the opinions is without substantial evidentiary support.

    Dr. Fretwell's opinions contain a detailed assessment of Bobbi's functioning, both with respect to the B criteria under the mental health listings and the effects of Bobbi's impairments on specific work-capacity functions. Dr. Fretwell noted that she treats Bobbi for PTSD, major depressive disorder with psychotic features, and borderline personality disorder. She explained that Bobbi has active psychosis, even though she is medication compliant (Bobbi takes the highest dose possible of Seroquel, an antipsychotic drug) and attends her scheduled visits for counseling and medication management and review. She stated that Bobbi's prognosis for improvement is "guarded" because of the duration and intensity of her symptoms and the limited response she receives from treatment despite her adherence to her treatment regimen. (R. 653).

The ALJ decided that Dr. Fretwell's opinions were not consistent with the treatment notes, but the court cannot follow that reasoning. The contents of Bobbi's treatment notes appear fully consistent with Dr. Fretwell's opinions. The ALJ also characterized Bobbi's treatment with Dr. Fretwell as involving the titration of her Seroquel medication, and that once the medication was titrated, Bobbi's problems were controlled: "[Bobbi] reported significant benefit from Seroquel titration, which controlled her psychotic symptoms, mood, suicidal ideation, paranoia, and insomnia." (R. 21). A fair reading of the mental health records indicates that while increases in Seroquel dosages had benefits, Bobbi's psychotic symptoms, mood, paranoia, and insomnia were not substantially controlled. She continued to experience audio and visual hallucinations, high levels of anxiety, intense feelings to self-harm, and intense feelings of dangerousness toward others. Every one of the symptoms listed by Dr. Fretwell as experienced by Bobbi are reflected in the records of her treatment of Bobbi, including the counselor's reports, which Dr. Fretwell oversaw.

On remand and with the assistance of expert medical review of the record, the Commissioner must reassess whether a listing is met or medically equaled and, if not, an appropriate RFC, taking into account Dr. Fretwell's opinions (and the weight they deserve) and Bobbi's statements about the effects of her impairments on her functioning.

## **Conclusion**

For the foregoing reasons, the court REVERSES and REMANDS under sentence four of 42 U.S.C. § 405(g) the Commissioner's decision that Bobbi was not disabled.

So ORDERED.

Dated: November 24, 2020

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system